UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CR-14019-CANNON/MAYNARD

UNITED STATES OF AMERICA

v.

KELLY YANIRA DEL VALLE,

Defendant.
_____/

## STIPULATION OF FACTS AND ACKNOWLEDGMENT OF OFFENSE ELEMENTS IN SUPPORT OF GUILTY PLEA

The United States of America, by and through the undersigned Assistant United States Attorney, and Kelly Yanira Del Valle (hereinafter referred to as the "Defendant" or "DEL VALLE"), together with her counsel, admit that the United States can prove the allegations contained in Count One of the Indictment, which charges the Defendant with conspiracy to harbor aliens by means of employment, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iii) and 1324(a)(1)(A)(v)(I), Count Two of the Indictment, which charges the Defendant with filing a false tax return, in violation of Title 26, United States Code, Section 7206(1), and Count Five of the Indictment, which charges the Defendant with aiding the filing of false tax returns, in violation of Title 26, United States Code, Section 7206(2).

The Defendant also stipulates that the following recitation of the facts shall constitute the underlying factual basis for her guilty plea. These facts are not all of the facts known to the United States in this case and are offered merely to provide a sufficient factual basis to support the Defendant's guilty plea.

1

Martinez Builders Supply, LLC, d/b/a East Coast Truss ("ECT"), is a Florida limited liability company that was formed in 2010. At all times relevant to the Indictment, ECT was engaged in the business of designing and constructing wood trusses for residential and commercial buildings. ECT was headquartered in Fort Pierce, Florida, which is located within the Southern District of Florida, and employed over one hundred workers, many of whom were manual laborers.

C.M. was and still is the president and managing member of ECT. B.G. was and still is an employee of ECT. B.G. was an office manager at ECT from in or about December 2020, through on or about August 6, 2021. L.T. was an officer manager at ECT until in or about December 2020, when she left ECT. At all times referenced herein, C.M., B.G., and L.T. were agents of ECT acting within the scope of their employment.

DEL VALLE was employed by ECT until in or about October 2019. DEL VALLE held various positions during the time she was employed by ECT.

Hollys Services LLC ("Hollys Services") was a Florida limited liability company formed by DEL VALLE. Hollys Services was formed by DEL VALLE for the purpose of concealing, harboring, and shielding aliens who worked at ECT from detection by law enforcement. DEL VALLE was a member and manager of Hollys Services. DEL VALLE also used Hollys Services as a tax return preparation business. DEL VALLE operated Hollys Services out of her residence in Saint Lucie County, Florida.

Quality Control LLC ("Quality Control") was a fictitious name created by DEL VALLE. Quality Control was created by DEL VALLE for the same purpose as Hollys Services, that is, to conceal, harbor, and shield aliens who worked at ECT from detection by law enforcement. DEL VALLE operated Quality Control out of her residence in Saint Lucie County, Florida.

DEL VALLE, met with taxpayers and prepared tax returns for those taxpayers for the tax years 2018, 2019, and 2020.

On or about March 12, 2018, Homeland Security Investigations ("HSI") served ECT with a Notice of Inspection. A Notice of Inspection is the procedure by which HSI initiates an audit of a business' employment records. HSI requested ECT to produce Form I-9s for all of its employees. Form I-9 is used for verifying the identity and employment authorization of individuals hired for employment in the United States. All United States employers must ensure proper completion of Form I-9 for each individual they hire for employment in the United States.

On or about March 16, 2018, ECT, through its agents acting within the scope of their employment, including L.T., provided HSI with Form I-9s for approximately 150 employees in response to the Notice of Inspection.

On or about May 25, 2018, based on a review of the Form I-9s that ECT provided, HSI identified 43 ECT employees who appeared to be aliens not authorized to work in the United States. HSI provided ECT with a list of the 43 employees, and warned ECT it could be subject to criminal charges if it continued to employ aliens who were not authorized to work in the United States. C.M., L.T., and B.G. were all aware of the results of HSI's audit.

In or about June 2018, DEL VALLE, C.M., and L.T., met at ECT and agreed to "transfer" the aliens employed by ECT who were not authorized to work in the United States to Hollys Services, which was established by DEL VALLE, so that they no longer appeared on ECT's payroll. The purpose of the scheme was to conceal, harbor, and shield the aliens who worked at ECT from HSI's audit. DEL VALLE also agreed to recruit and hire additional aliens to work for ECT, who were not authorized to work in the United States, under the guise of Hollys Services, and later Quality Control.

On or about June 8, 2018, DEL VALLE formed Hollys Services for the purpose of concealing, harboring, and shielding the aliens employed by ECT from HSI's audit.

On or about June 8, 2018, DEL VALLE opened an account at SunTrust Bank in Saint Lucie County, Florida, in the name of Hollys Services.

On or about June 15, 2018, ECT falsely notified HSI that 36 of the 43 ECT employees identified by HSI had been terminated. ECT provided verification that 4 of the ECT employees identified by HSI were lawfully permitted to work in the United States.

On or about June 18, 2018, ECT entered into a "General Service Agreement" with Hollys Services, whereby Hollys Services agreed to provide ECT with, among other things, "labor services." The "General Service Agreement" was signed by C.M., on behalf of ECT, and DEL VALLE, on behalf of Hollys Services. The "General Service Agreement" was an artifice designed by C.M. and DEL VALLE to conceal, harbor, and shield aliens who worked at ECT from detection by law enforcement.

On or about June 18, 2018, several of the employees HSI had identified as aliens not authorized to work in the United States were transferred from ECT's payroll to Hollys Services' payroll to conceal, harbor, and shield their true identities from HSI's audit. These aliens continued to work for ECT while purportedly being employed and paid by Hollys Services.

On or about August 29, 2019, ECT entered into a "Employment Contract Agreement" with Quality Control, whereby Quality Control agreed to provide ECT with "LABOR" services. The "Employment Contract Agreement" was signed by C.M., on behalf of ECT, and DEL VALLE, on behalf of Quality Control. The "Employment Contract Agreement" was an artifice designed by C.M. and DEL VALLE to conceal, harbor, and shield aliens who worked at ECT from detection by law enforcement.

ECT continued to control and direct, among other things: (1) how the work was performed by the employees who worked for ECT under the guise of Hollys Services and Quality Control; (2) where the work was performed by the employees who worked for ECT under the guise of Hollys Services and Quality Control; and (3) the hours in which the work was performed by the employees who worked for ECT under the guise of Hollys Services and Quality Control.

DEL VALLE provided L.T. and/or B.G. with the hours worked and hourly rate for the employees who purportedly worked for Hollys Services and Quality Control on a weekly basis. L.T. directed DEL VALLE to identify the employees who purportedly worked for Hollys Services and Quality Control by codes related to their position.

Only the employees who purportedly worked for Hollys Services and Quality Control were identified by codes. The employees who remained on ECT's payroll, that is the employees who were legally authorized to work in the United States, were identified by their actual names.

On or about August 23, 2019, DEL VALLE opened an account at TD Bank in Saint Lucie County, Florida, in the name of Quality Control.

On or about May 27, 2021, DEL VALLE opened an account at Bank of America in Saint Lucie County, Florida, in the name of "HOLLYS".

Between on or about June 28, 2018, and on or about August 23, 2019, ECT, through its agents acting within the scope of their employment, transferred over $750,000 to the bank account DEL VALLE set up at SunTrust in the name of Hollys Services, in 62 separate electronic transfers, some of which was earmarked for the express purpose of paying the aliens who worked at ECT.

Between August 30, 2019 and May 28, 2021, ECT, through its agents acting within the scope of their employment, transferred over $2,200,000 to the bank account DEL VALLE set up

5

at TD Bank in the name of Quality Control, in 92 separate electronic transfers, some of which was earmarked for the express purpose of paying the aliens who worked at ECT.

Between June 4, 2021 and July 30, 2021, ECT, through its agents acting within the scope of their employment, transferred over $400,000 to the bank account DEL VALLE set up at Bank of America in the name of Hollys, in 9 separate electronic transfers, some of which was earmarked for the express purpose of paying the aliens who worked at ECT.

ECT, through its employees, directed or caused the electronic transfers to be sent from ECT's bank account at TD Bank to the bank accounts DEL VALLE set up at SunTrust, TD Bank, and Bank of America on a weekly basis, to cover the payroll expenses for the aliens who worked for ECT but were purportedly employed by Hollys Services and Quality Control.

After the electronic transfers were completed, DEL VALLE paid the aliens who worked for ECT but were purportedly employed by Hollys Services and Quality Control via check and with cash, oftentimes at ECT's headquarters in Saint Lucie County, Florida.

Between October 2020 and July 2021, law enforcement conducted surveillance on DEL VALLE. On multiple occasions during this time frame, law enforcement observed DEL VALLE withdraw large amounts of cash from TD Bank in Fort Pierce, and Bank of America in Fort Pierce, after which she drove to ECT. On several of those occasions, law enforcement observed DEL VALLE hand large envelopes of cash to N.G.F. in ECT's parking lot. N.G.F. was one of the ECT employees HSI identified in May 2018 as someone who was not authorized to work in the United States. ECT falsely told HSI in June 2018 that N.G.F. had been terminated, when in fact N.G.F. continued to work for ECT under the guise of Hollys Services, and later Quality Control.

On August 6, 2021, law enforcement executed a search warrant at ECT's headquarters in Saint Lucie County. Law enforcement encountered 58 employees when they executed the search

warrant at ECT's headquarters. Of the 58 employees encountered at ECT's headquarters, 28 of them were aliens who were not authorized to work in the United States, and several of them were included in the list of unauthorized workers HSI provided to ECT in May 2018.

Shortly before executing the search warrant at ECT, law enforcement observed DEL VALLE travel to Bank of America in Fort Pierce in a vehicle registered to her, and withdraw a large amount of cash from the commercial teller window. Thereafter, DEL VALLE traveled to ECT's parking lot. J.H. was driving the vehicle. DEL VALLE was sitting in the passenger's seat. After the vehicle entered ECT's parking lot, law enforcement stopped the vehicle and detained DEL VALLE and J.H. and searched the vehicle. Approximately $21,316.00 in U.S. currency was seized from DEL VALLE's purse.

*Tax Charges*

For the tax years 2018 and 2019, DEL VALLE substantially underreported her gross receipts on the Schedule C she filed with her personal tax returns. Specifically, DEL VALLE earned gross receipts of $345,073 in 2018, and $724,404 in 2019. DEL VALLE represented on her Schedule C for the tax year 2018 that she only earned gross receipts of $2,000 in 2018, and represented on her Schedule C for the tax year 2019 that she only earned gross receipts of $5,500 in 2019. DEL VALLE knew this information was false when she included it on her personal tax returns for the tax years 2018 and 2019. These false statements were material and resulted in a tax loss to the IRS for the tax years 2018 and 2019.

DEL VALLE also made a false statement in her 2020 personal tax return in that she failed to include the income she received from her tax preparation services ($16,168) on Form 1040 Line 9. DEL VALLE knew this information was false when she included it on her personal tax return for the year 2020. This false statement was material and resulted in a tax loss to the IRS for the

tax year 2020.

DEL VALLE prepared her personal tax returns for the tax years 2018, 2019, and 2020, and included her Preparer Tax Identification Number ("PTIN") on each return. By the use of her PTIN, DEL VALLE signed each return under the penalty of perjury, and declared that the information contained therein was true, correct, and complete.

The total amount of tax loss related to DEL VALLE's false personal tax returns for the tax years 2018, 2019, and 2020 was **$41,360.00.**

DEL VALLE also prepared personal tax returns for the following individuals: J.B. (tax years 2018 and 2019), A.E. (tax years 2018 and 2019), G.M.R. (tax years 2018 and 2019), V.J.D. (tax years 2018 and 2019), R.F.L.R. (tax years 2018, 2019, and 2020), A.K.E. (tax years 2018, 2019, and 2020), and R.M. (tax year 2020).

Law enforcement interviewed J.B., A.E., G.M.R., V.J.D., R.F.L.R., A.K.E., and R.M. J.B., A.E., G.M.R., V.J.D., R.F.L.R., A.K.E., and R.M. each identified DEL VALLE as the person who prepared their tax returns for the tax years referenced above. Each of their tax returns also listed DEL VALLE and Hollys Services as the preparer, and included DEL VALLE's PTIN. J.B., A.E., G.M.R., V.J.D., R.F.L.R., A.K.E., and R.M. each confirmed that they did not own or operate a business, which precluded them from using Schedule C. DEL VALLE fraudulently included Schedule C business income and expenses on the returns she submitted for these taxpayers. Specifically, DEL VALLE fraudulently included the following items on the returns she submitted for J.B., A.E., G.M.R., V.J.D., R.F.L.R., A.K.E., and R.M, knowing full well that that these taxpayers were not entitled to claim such deductions or credits:

| TAXPAYER | DATE OF OFFENSE | TAX YEAR | FALSE ITEMS |
| --- | --- | --- | --- |
| J.B. and A.E. | 03/02/2019 | 2018 | Total Income (Line 6); Schedule C |
| J.B. and A.E. | 02/05/2020 | 2019 | Total Income (Line 7b); Schedule C |
| G.M.R. and V.J.D. | 02/04/2019 | 2018 | Wages (Line 1); Total Income (Line 6); Schedule C |
| G.M.R. and V.J.D. | 02/08/2020 | 2019 | Total Income (Line 7b); Schedule C |
| R.F.L.R and A.K.E. | 03/03/2019 | 2018 | Total Income (Line 6); Schedule C |
| R.F.L.R and A.K.E. | 02/23/2020 | 2019 | Total Income (Line 7b); Schedule C |
| R.F.L.R and A.K.E. | 02/27/2021 | 2020 | Total Income (Line 9); Schedule C |
| R.M. | 03/15/2021 | 2020 | Total Income (Line 9); Schedule C |

The false statements DEL VALLE included in the personal tax returns she prepared and filed for J.B., A.E., G.M.R., V.J.D., R.F.L.R., A.K.E., and R.M. were material, and resulted in a tax loss to the IRS for the tax years 2018, 2019, and 2020.

The total amount of tax loss related to the personal tax returns DEL VALLE prepared and filed for J.B., A.E., G.M.R., V.J.D., R.F.L.R., A.K.E., and R.M. was **$30,205.00**.

The defendant is aware of and understands the nature of the charges to which she is pleading guilty and understands that had it proceeded to trial, the United States would have had to prove the following elements beyond a reasonable doubt:

**Count 1:**     Title 8, United States Code, Sections 1324(a)(1)(A)(iii) and 1324(a)(1)(A)(v)(I):

(1) The Defendant agreed with another person to try to accomplish a shared and unlawful plan to conceal, harbor, or shield aliens from detection in any place; and

(2) The defendant knew or recklessly disregarded the fact such aliens entered or remained in the United States in violation of law; and

(3) The defendant knew the unlawful purpose of the plan and willfully joined it.

The word "person" includes corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals.

To act with "reckless disregard of the fact" means to be aware of but consciously and carelessly ignore facts and circumstances clearly indicating that the person concealed, harbored, or shielded from detection was an alien who had entered or remained in the United States illegally.

**Count Two:**  Title 26, United States Code, Section 7206(1):

(1) The defendant made or caused to be made a tax-related document for a specific year;

(2) The tax-related document contained a written declaration that it was made under the penalty of perjury;

(3) When the defendant made or helped to make the tax-related document, she knew it contained false material information;

(4) When the defendant did so, she intended to do something she knew violated the law; and

(5) The false matter in the tax-related document was related to a material statement.

A declaration is "false" if it is untrue when it is made and the person making it knows it is untrue. A declaration in a document is "false" if it is untrue when the document is used and the person using it knows it is untrue.

A declaration is "material" if it concerns a matter of significance or importance, not a minor or insignificant or trivial detail.

A false matter is "material" if the matter was capable of influencing the Internal Revenue Service.

The fact that an individual's name is signed to a return, statement, or other document is prima facie evidence that the return, statement, or other document was actually signed by her.

An electronic signature is sufficient to generate the presumption, when accompanied by a PTIN.

**Count Five:** **Title 26, United States Code, Section 7206(2):**

(1) The Defendant aided in, assisted in, procured, counseled, advised on the preparation or presentation of a return in connection with any matter arising under the Internal Revenue laws;

(2) The return contained a false statement;

(3) The defendant knew that the statement in the return was false;

(4) The false statement was material; and

(5) The defendant did so with the intent to do something the defendant knew the law forbids.

The defendant and its attorney agree that the facts recited above meet these elements.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: 8/29/24          By: _____
                            MICHAEL D. PORTER
                            ASSISTANT UNITED STATES ATTORNEY

Date: 8-29-24          By: _____
                            KELLY YANIRA DEL VALLE
                            DEFENDANT

Date: 8/29/24          By: _____
                            MICHAEL MIRER
                            ATTORNEY FOR DEFENDANT